AO 91 (Rev. 11/11) Criminal Complaint

UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
MAY - 8 2019
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

UNITED STATES OF AMERICA

v.

SERGIO DELGADO,

Defendant.

Case No. ED19-0266M

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about March 20, 2019, in the County of San Bernardino in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) | Possession with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Keith A. Maccalla, Special Agent
Printed name and title

Sworn to before me and signed in my presence.
Date: MAY 0 8 2019

SHERI PYM
Judge's signature

City and state: Riverside, California

Hon. Sheri Pym, U.S. Magistrate Judge
Printed name and title

AUSA John A. Balla

## AFFIDAVIT

I, Keith A. MacCalla, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") since July 2014. I am currently assigned to the Los Angeles Field Office, Riverside Resident Agency, Violent Crime Squad. Since August 2015, I have been assigned to the FBI Los Angeles Gang Impact Team ("FBI LA GIT"), a joint federal and state gang task force. In this capacity, I investigate, among other things, criminal street gangs and the trafficking of narcotics. I have received specialized training in conducting criminal investigations and have consulted with my colleagues who have many years of experience investigating criminal street gangs and narcotics trafficking.

3. Prior to working for the FBI, I was a Border Patrol Agent from April 2007 to July 2014. During this time, I was assigned to investigate human and narcotics trafficking, as well as money laundering.

4. During my tenure with the FBI, I have participated in investigations of violent crime, drug trafficking organizations, and large-scale street gangs, including investigations that have

involved court-authorized interception of wire and electronic communications. I have become familiar with the methods, language, structures, and criminal activities of criminal street gangs and drug trafficking organizations operating in and through this judicial district. I have become familiar with the types and amount of profits made by narcotics smugglers and the methods, language, and terms that are used to disguise the source and nature of profits from illegal narcotic dealings.

5. As a federal agent, I am authorized to investigate violations of laws of the United States and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

## II. **PURPOSE OF AFFIDAVIT**

6. This affidavit is made in support of a criminal complaint against Sergio Delgado ("DELGADO") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii): Possession of Methamphetamine with Intent to Distribute.

7. This affidavit is also made in support of an application for a warrant to search the following digital devices in the custody of the FBI in San Bernardino, California:

    a. A black Samsung Galaxy J2 cellular phone, model number SM-J260T1, IMEI number 352475/10/331830/7 ("SUBJECT DEVICE 1");

    b. A black Alcatel Fierce 4 cellular phone, model number 5056N, IMEI number 014650001470257 ("SUBJECT DEVICE 2");

    c. A black Ultra-branded Samsung Galaxy J8 cellular phone, serial number J8072018G8 ("SUBJECT DEVICE 3"); and

   d. Four microSD data storage cards contained in a small clear plastic case, one Samsung-branded, one Kingston-branded, one with "SD-C026" markings, and one with "microSD 2GB" markings ("SUBJECT DEVICE 4" through "SUBJECT DEVICE 7," and, collectively with SUBJECT DEVICES 1, 2, and 3, the "SUBJECT DEVICES").

  8. The requested search warrant seeks authorization to seize any data on the SUBJECT DEVICES that constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (possession of a controlled substance with the intent to distribute) and 21 U.S.C. § 846 (conspiracy) (collectively, the "Subject Offenses").

  9. The SUBJECT DEVICES are also identified in Attachment A to the search warrant application. The list of items to be seized is set forth in Attachment B to the search warrant application. Attachments A and B are incorporated herein by reference.

  10. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint, arrest warrant, and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. SUMMARY OF PROBABLE CAUSE

11.  On Wednesday, March 20, 2019, GIT investigators were conducting surveillance in the vicinity of 246 North J Street, San Bernardino, California, prior to the execution of a state search warrant.  During the surveillance, investigators observed a vehicle, later found to be driven and solely occupied by DELGADO, depart from the residence, and investigators requested assistance from the San Bernardino Police Department ("SBPD") to conduct a traffic enforcement stop of the vehicle.

12.  SBPD officers attempted to conduct a traffic stop of the vehicle, but DELGADO failed to yield and led officers on a short pursuit.  DELGADO eventually yielded, and, during a subsequent search of the vehicle, officers found approximately 55 grams of suspected methamphetamine and the SUBJECT DEVICES.

### IV. STATEMENT OF PROBABLE CAUSE

**A.  DELGADO arranges methamphetamine sales over text message.**

13.  On July 2, 2018, I obtained a federal search warrant, lodged under case number 5:18-MJ-293 in the United States District Court for the Central District of California for a cell phone with call number 909-688-0724 believed to be used by a known methamphetamine distributor.  During the search of that device, the following text messages were recovered:

| Party | Time | Direction | Status | Message |
|---|---|---|---|---|
| From: +14424008508 BALL | 5/27/2018 4:39:01 PM (UTC+0) | Incoming | Read | I got that for u |

4

| Party | Time | Direction | Status | Message |
|---|---|---|---|---|
| To: +14424008508 BALL | 5/27/2018 4:48:04 PM(UTC+0) | Outgoing | Sent | On my way! |
| From: +19096880724 To: +14424008508 BALL | 6/14/2018 11:01:10 PM(UTC+0) | Outgoing | Sent | HEY ARE U CLOSE |
| From: +19096880724 To: +14424008508 BALL | 6/14/2018 5:05:25 PM(UTC+0) | Outgoing | Sent | HEY ITS ME Destiny |
| From: +14424008508 BALL To: +19096880724 | 6/14/2018 5:50:09 PM(UTC+0) | Incoming | Read | Yea dear |
| From: +19096880724 To: +14424008508 BALL | 6/14/2018 5:52:40 PM(UTC+0) | Outgoing | Sent | IM SHORT 100 |
| To: +14424008508 BALL | 6/14/2018 5:52:40 PM(UTC+0) | Outgoing | Sent | IM SHORT |
| From: +19096880724 To: +14424008508 BALL | 6/14/2018 7:36:07 PM(UTC+0) | Outgoing | Sent | WAS HE READY |
| From: +14424008508 BALL To: +19096880724 | 6/14/2018 8:12:59 PM(UTC+0) | Incoming | Read | I just spoke to him with in the hour |
| From: +19096880724 To: +14424008508 BALL | 6/14/2018 8:13:45 PM(UTC+0) | Outgoing | Sent | THANK U |
| From: +14424008508 BALL To: +19096880724 | 6/18/2018 6:09:48 PM(UTC+0) | Incoming | Read | 11,200 for the 7 at 1600 each.ok |
| From: +19096880724 To: +14424008508 BALL | 6/18/2018 6:09:58 PM(UTC+0) | Outgoing | Sent | K TY |

14. Based on the text messages, I believe that the user of phone number 442-400-8508, who is listed in the phone's contact list as "BALL," was facilitating the supply of and/or supplying methamphetamine to the user of phone number 909-688-0724. This

5

is based on the user of the -8508 number telling the user of the -0724 number that it will be "11,200 for the 7 at 1600 each." Based on my training an experience, I know that those amounts are consistent with the cost for pound quantities of methamphetamine at $1,600 for each pound.

15. In October of 2018, I conducted a public records database query of the -8508 number and learned that it was associated to DELGADO at the J Street residence. I also learned from GIT investigator Detective C. Godoy that DELGADO was a Westside Verdugo gang member whose gang moniker was "Madball" or "Ball."

**B. DELGADO is stopped with methamphetamine in his vehicle.**

16. Based on a review of investigation reports from other law-enforcement officers and bodycam footage, I know the following:

    a. On Wednesday, March 20, 2019, GIT investigators were conducting surveillance in the vicinity of the J Street residence prior to the execution of a state search warrant at the residence. During the surveillance, investigators observed a vehicle, later found to be driven and solely occupied by DELGADO, depart from the residence, and the investigators requested assistance from SBPD to conduct a traffic enforcement stop of the vehicle. Prior to SBPD officers conducting the stop, GIT investigator Officer M. Paluzzi advised the officers that DELGADO was believed to be driving the vehicle and that DELGADO was on probation.

6

b. SBPD officers attempted to conduct a traffic stop of the vehicle for violations of California Vehicle Code ("CVC") Sections 24601 (Rear License Plate Lamp Not Illuminated) and 26708(a) (Window Tint). DELGADO pulled the vehicle over, and as the officer began to step out of his vehicle, DELGADO accelerated his vehicle and drove away from the officer. DELGADO led officers on a pursuit for approximately 0.7 miles, during which the officer saw DELGADO leaning toward the center of the vehicle in an apparent attempt to conceal something. DELGADO eventually yielded and complied with officers' commands to exit the vehicle.

c. SBPD officers conducted a records check of DELGADO and found that he was on probation with San Bernardino County. SBPD officers searched his vehicle and found the following items, amongst others, which were contained in a camouflage colored center-zip style duffle bag located in the center console toward which DELGADO had been leaning:

   i. A clear sandwich-style baggie containing approximately 26.5 grams of suspected methamphetamine;

   ii. A clear sandwich-style baggie containing approximately 28.8 grams of suspected methamphetamine;

   iii. Two black digital scales which appeared to be functioning; and

   iv. Numerous small empty sandwich baggies.

d. Officers also located SUBJECT DEVICES 1 through 7 during their search.

  e. Based on the pursuit and evidence recovered during the search of the vehicle, DELGADO was arrested and charged with California Health & Safety Code ("HS") Sections 11378 (Possession of Methamphetamine for Sale) and 11379 (Transportation of Methamphetamine) and CVC Section 2800.4 (Evading a Peace Officer: Wrong Way Driver).

 17. Based on my training, experience, and knowledge of the investigation, I believe DELGADO possessed a controlled substance with intent to distribute. My belief is based on the following facts:

  a. Texts messages were recovered from the phone of a known methamphetamine distributor which indicated that DELGADO was supplying or facilitating the supply of pound quantities of methamphetamine.

  b. DELGADO was the sole occupant of a vehicle from which SBPD recovered approximately 55 grams of suspected methamphetamine (packaged in approximate ounce quantities in two separate sandwich-style baggies), two digital scales, and three cellular telephones, amongst other items.

 18. Also, based on my training, experience, and knowledge of the investigation, I believe DELGADO was using the SUBJECT DEVICES to conspire to possess and to facilitate possession with intent to distribute narcotics. My belief is based on the following facts:

  a. The texts messages believed to be sent and received by DELGADO which indicate that he has previously used a phone to facilitate narcotics distribution.

b. More than one cellular phone found in the same bag which contained the suspected methamphetamine and digital scales.

19. Based on my training and experience, I have learned that digital devices including but not limited to cellular telephones are used by narcotics dealers and distributors to coordinate the sale, transportation, and distribution of illegal narcotics. Narcotics sales transactions and narcotics paraphernalia are often recorded and memorialized by means including but not limited to text messages, voicemail messages, messages sent and received through applications and social media, photographs, and videos contained within the digital devices.

**C. Lab Report**

20. SBPD sent the suspected methamphetamine from DELGADO's vehicle to a San Bernardino County narcotics lab. The lab issued a report stating that they tested one of the bags and confirmed that the substance inside the bag contained methamphetamine. I obtained the two bags and sent them to a Drug Enforcement Administration ("DEA") lab to test for substance identity, purity, and weight. A DEA lab report is pending.

**V. TRAINING AND EXPERIENCE ON DRUG OFFENSES**

21. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

b. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

c. Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices. This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal. In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

      d.    Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

22. Individuals engaged in drug trafficking often use multiple digital devices.

### VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

26. As used herein, the term "digital device" includes the SUBJECT DEVICES.

27. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

      a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

28. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

    a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

29. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

///

///

## VII. CONCLUSION

30. For all the reasons described above, I respectfully submit there is probable cause to believe that DELGADO committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (possession with intent to distribute controlled substances).

31. Furthermore, there is probable cause to believe that evidence, fruits, and instrumentalities of the Subject Offenses will be found on the SUBJECT DEVICES as described above and in Attachment A.

KEITH A. MACCALLA
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me
this ____ day of May, 2019.

UNITED STATES MAGISTRATE JUDGE